Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| | | |
|---|---|---|
| ARTEMIO DENIZ IRRIZARRY<br>Recurrido<br><br>*v.*<br><br>IVONNE MARIE IRIZARRY MATOS<br>Peticionaria | TA2026CE00233 | *Certiorari* procedente del Tribunal de Primera de Instancias, Sala de San Juan<br><br>Caso Núm. SJ2025RF01380<br><br>Sobre:<br>Divorcio – Ruptura Irreparable, Custodia Monoparental o Compartida, Custodia Relaciones Paterno/Materno filiales, Alimentos Menores de Edad |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Adames Soto, Juez Ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 10 de junio de 2026.

Comparece la Sra. Ivonne Marie Irizarry Matos (señora Irrizary Matos o peticionaria), mediante recurso de *certiorari*, solicitando que revoquemos una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 22 de enero de 2026. Mediante su determinación, el foro primario le permitió al Sr. Artemio Deniz Irizarry (señor Deniz Irizarry o recurrido) retirar su aceptación de capacidad económica en el proceso de fijación de alimentos a favor de la menor de edad que las partes tienen en común, antes de que se hubiese impuesto la pensión alimentaria final.

Contrario a ello, la peticionaria sostiene que, "una vez el recurrido admitió tener capacidad económica, no conserva la autoridad o prerrogativa unilateral de retirarla cuando desee".[1]

Examinados los planteamientos de las partes, y la jurisprudencia pertinente, no observamos abuso de discreción alguno en la determinación

---

[1] Petición de *certiorari*, pág. 22.

recurrida, de modo que hemos decidido denegar expedir el recurso discrecional solicitado.

## I. Resumen del tracto procesal

El señor Deniz Irizarry instó una *Demanda* de divorcio por ruptura irreparable contra la señora Irizarry Matos el 25 de septiembre de 2025. Este solicitó, entre otras, que se le otorgara la custodia monoparental de la hija menor de edad que tenía junto a la demandada-peticionaria, y se fijara la correspondiente pensión alimentaria.

En respuesta, el 2 de octubre de 2025, la señora Matos presentó una *Contestación a la demanda* y *reconvención*, solicitando a su vez la custodia monoparental de la menor. En lo referente al tema de la pensión alimentaria para la menor, peticionó que el asunto fuera referido a la atención de la Examinadora de Pensiones Alimenticias (EPA), para que recomendara al Tribunal el establecimiento de una pensión provisional.

En atención a ello, el 3 de octubre de 2025, el TPI refirió los asuntos relativos a la custodia y relaciones filiales de la menor a la atención de la Unidad Social del Tribunal. Dispuso, además, que la pensión alimentaria provisional a establecerse en favor de esta sería atendida en una vista ante el EPA, el 20 de octubre de 2025.

El 16 de octubre de 2025 fue emitida *Sentencia* declarando *Con Lugar* la solicitud de divorcio, y ordenando la custodia compartida de la menor por los padres, de forma provisional. Además, se mantuvo el señalamiento de vista de fijación de pensión alimentaria provisional.

Así las cosas, y con relación a esto último, el 20 de octubre de 2025, la señora Irizarry Matos presentó su *Planilla de Información Personal y Económica* (PIPE) ante la EPA.

Por consiguiente, se emitió el *Informe de la Examinadora de Pensiones Alimenticias,* el 24 de octubre de 2025. No obstante, dado que el señor Deniz Irizarry no había presentado su PIPE aun, se le concedió un término de diez (10) días para informar si se disponía a aceptar capacidad

económica para cubrir los gastos de su hija, o presentar su PIPE con evidencia de sus ingresos y de los gastos de la menor. Además, se estableció una pensión alimentaria provisional, en la cual cada parte cubriría los gastos de la menor mientras la tuvieran bajo su compañía, y se cubrirían los gastos escolares y médicos en partes iguales. En adición, se pautó una vista para el 20 de noviembre de 2025.

Como parte del descubrimiento de prueba, el mismo día, el señor Irizarry presentó una *Moción Informativa sobre Envío del Primer Pliego de Interrogatorio y Requerimiento de Producción de Documentos a la Parte Demandada.*

Luego, el 27 de octubre de 2025, el TPI notificó una *Resolución*, acogiendo el *Informe de la Examinadora de Pensiones Alimenticias,* ordenándole al señor Irizarry a informar si aceptaba tener capacidad económica, o presentara su PIPE en o antes del 30 de octubre de 2025.

A los pocos días, el 30 de octubre de 2025, el señor Irizarry presentó una *Moción Informativa y en Solicitud de Prórroga,* relativa a la referida *Orden.*

Examinada la petición de prórroga aludida, el 31 de octubre de 2025, el TPI emitió una *Orden*, concediéndole diez (10) días para cumplir con la *Resolución.*

En cumplimiento, el 10 de noviembre de 2025, el señor Irizarry presentó una *Moción Informativa y en Solicitud de Prórroga*, indicando que asumiría capacidad económica de manera provisional, en la parte que le correspondiera según los cálculos de pensión alimentaria en casos de custodia compartida al cincuenta por ciento. Además, informó que las partes aún se encontraban en el proceso de descubrimiento de prueba sobre los gastos expresados en la PIPE radicada por la señora Irizarry Matos.

En virtud de lo anterior, el 14 de noviembre de 2025, la EPA emitió una *Orden*, recomendando que se le requiriera al señor Deniz Irizarry

presentar su PIPE, según se le había ordenado previamente. También estableció que ello no impedía que el señor Deniz Irizarry voluntariamente aceptara tener capacidad económica para cubrir el cien por ciento (100%) de las necesidades razonables de su hija.

El TPI acogió dicha recomendación de la EPA, mediante *Orden* suscrita el mismo día.

Por ello, en igual fecha, el señor Irizarry presentó una *Moción en Cumplimiento de Orden Informativa Aceptando Voluntariamente Tener Capacidad Económica para Cubrir las Necesidades Razonables de su Hija.* Como lo anticipa el título de su moción, en este escrito el señor Irizarry aceptó tener capacidad económica para cubrir el cien por ciento (100%) de las necesidades razonables de su hija menor de edad. Reiteró, demás, que el descubrimiento de prueba continuaba en proceso.

Vista esta última moción, el 18 de noviembre de 2025, la EPA emitió una *Orden* disponiendo lo siguiente:

> Teniendo tiempo en exceso para culminar el descubrimiento de prueba, se señala la conferencia con antelación a la vista, de manera remota a través del sistema de videoconferencia de la plataforma Zoom, para el día 20 de enero de 2026, 3:00 p.m. Se aneja las instrucciones para preparar el informe de conferencia que deberá presentarse en o antes del 13 de enero de 2026.[2]

Cabe indicar que, el 19 de noviembre de 2025, la señora Irizarry Matos presentó una *Moción Solicitando Transferencia de Vista*, solicitando que su representación legal fuera relevada del caso y se le concediera un término adicional para contratar nueva representación legal.

En efecto, el 20 de noviembre de 2025, el TPI relevó a la representación legal de la señora Irizarry Matos, y le concedió un término de treinta (30) días para anunciar su nueva representación legal.

En cumplimiento, el 19 de diciembre de 2025, la señora Matos presentó una *Moción Asumiendo Representación Legal.* Además de solicitar al Tribunal que admitiera su nueva representación legal, la peticionaria peticionó que se le concediera un término de quince (15) días para revisar

---

[2] *Orden de la Examinadora de Pensiones Alimenticias*, Entrada Núm. 43 de SUMAC (TPI).

el expediente judicial de SUMAC y cumplir con pronunciarse sobre cualquier asunto que estuviera pendiente.

El 22 de diciembre de 2025, TPI declaró *Ha Lugar* tal solicitud.

Más adelante, el 30 de diciembre de 2025, la Unidad Social emitió su *Informe Social Forense*, recomendando que la custodia de la menor fuera compartida entre sus progenitores, identificando tal curso de acción como el que garantizaba el mayor bienestar de la menor.

Posteriormente, el 13 de enero de 2026, el señor Deniz Irizarry presentó otra *Moción Informativa y en Solicitud de Prórroga*, a los fines de indicar que las partes y sus representantes legales estaban colaborando de buena fe en el proceso de establecer la pensión alimentaria, y aspiraban a minimizar las controversias o a llegar a una estipulación final que permitiera terminar todas las controversias del caso. En consecuencia, solicitó que se les concediera a las partes hasta el 19 de enero de 2026, para radicar el informe para la vista de alimentos o informar un acuerdo final.

El TPI accedió a la prórroga solicitada.

Luego, el 19 de enero de 2026, el señor Deniz Irizarry presentó una *Moción Urgente de Retiro de Aceptación de Capacidad Económica y en Solicitud de Continuar el Proceso Conforme Establecen las Guías de Pensión de Alimentos*. Adujo que, debido a las recomendaciones sobre la custodia compartida hechas por la Unidad Social, tomó la decisión de retirar su aceptación de capacidad económica previa. Al así solicitar, invocó a *De León Ramos v. Navarro Acevedo*, 195 DPR 157 (2016), como fundamento para que se le autorizara el retiro de la aceptación de capacidad económica, y que, en su lugar, la pensión fuera computada conforme lo establecen las Nuevas Guías de Pensiones de Alimentos. Respecto a la Opinión citada, llamó la atención del Tribunal al hecho de que la solicitud de retiro de aceptación de capacidad económica ocurría en un momento anterior al establecimiento de la pensión alimentaria final.

El mismo día, fue presentado el *Informe de Conferencia con Antelación al Juicio ante la Honorable Examinadora*, en el cual las partes expresaron que, luego de intercambiar ofertas, no pudieron llegar a acuerdos. Por tanto, en el *Informe* las partes se limitaron a estipular hechos y cuantías de gastos en hipoteca, mantenimiento y tutorías de la menor. Además, se hizo constar lo siguiente:

> En esta etapa del trámite procesal la parte demandante para eludir su obligación alimentaria que conlleva la aceptación de capacidad económica, sostiene que retiraría la alegación. La parte demandada se opone a que se permita dicho proceder a la parte demandante siendo contrario a derecho.[3]

En igual fecha, la señora Irizarry Matos presentó la *Prueba Documental de la Parte Demandada* y anejó los documentos que le fueron requeridos como parte del descubrimiento de prueba.

Al día siguiente, el 20 de enero de 2026, la señora Irizarry Matos también instó su *Vehemente Oposición a ¨Moción Urgente de Retiro de Aceptación de Capacidad Económica y en Solicitud de Continuar el Proceso Conforme Establecen las Guías de Pensión de Alimentos¨ y de Imposición de Severas Sanciones y Honorarios a Favor de la Parte Demandada*.

Entonces, ese mismo día, el señor Deniz Irizarry presentó una *Moción Sometiendo PIPE Juramentada y al Expediente Judicial*.

La vista ante la EPA pautada para el 20 de enero de 2026 fue suspendida, debido a que había mociones pendientes ante el TPI, emitiendo en su lugar un *Acta*, señalando la *Conferencia con antelación a la vista* para el 4 de marzo de 2026. En la misma *Acta* fue plasmado lo siguiente:

> El Tribunal debe tomar conocimiento de que a las partes se les solicitó reunirse nuevamente a los fines de enmendar el Informe de conferencia con antelación al juicio ante la Honorable Examinadora que presentaron el 19 de enero de 2026. Ello con el propósito de verificar la posibilidad de alcanzar estipulaciones en cuanto a la cantidad a la que ascienden los diferentes gastos en los que es necesario incurrir para beneficio de la menor alimentista.[4]

---

[3] *Informe de Conferencia con Antelación al Juicio ante la Honorable Examinadora*, Entrada Núm. 58 de SUMAC (TPI), págs. 3-4.
[4] *Acta*, Entrada Núm. 67 de SUMAC (TPI).

Una vez el TPI evaluó el *Informe Social Forense*, emitió una *Orden,* el 22 de enero de 2026, acogiendo las recomendaciones de la Unidad Social sobre custodia compartida.

Además, el mismo día, el TPI emitió la *Orden* cuya revocación nos solicita la parte peticionaria, disponiendo lo siguiente:

> Evaluados los hechos de este caso a la luz de lo resuelto por el Tribunal Supremo en *De León Ramos v. Navarro Acevedo*, 195 D.P.R. 157 (2016), se admite que el demandado retire su aceptación de capacidad económica.
>
> En *De León Ramos* dicho foro distinguió la solicitud para retirar la aceptación de capacidad hecha antes y después del transcurso de los tres años que establecen las guías para solicitar la modificación de la pension [*sic*]. A estos efectos determinó que el Tribunal "no podía imponerle al peticionario como condición al retiro de su aceptación de capacidad económica anterior el que justificara su determinación, luego de transcurrido el periodo de tres años, según provisto en la Ley de ASUME." (Enfasis nuestro.)
>
> En el caso de epígrafe, la aceptación del demandado se realizó fuera de dicho periodo ya que aún no se ha establecido la pension [*sic*] alimentaria final, por lo cual dicho término no ha comenzado a decursar. Por tanto, entendemos que en estas circunstancias el demandado aun [*sic*] tiene la facultad de retirar la aceptación de capacidad económica.[5]

En igual fecha, el TPI emitió una *Resolución*, confirmando que la custodia de la menor sería compartida entre los progenitores.

Inconforme, el 23 de febrero de 2026, la señora Irizarry Matos acudió ante nosotros, mediante recurso de *certiorari*, señalando la comisión de los siguientes errores:

> **PRIMER ERROR:** Erró y abusó de su discreción el TPI cuando le permitió al recurrido retirar la admisión de capacidad económica sin la presencia de justa causa, habiendo finalizado el descubrimiento de prueba y señalada la vista de fijacion [*sic*] de pension [*sic*] final.
>
> **SEGUNDO ERROR:** Erró y abusó de su discreción el TPI cuando permitió la actuación del recurrido, la cual ocasiona la dilación del trámite judicial y la adjudicación de la fijación de alimentos, en contra del mejor interés del menor y sin la imposición de severas sanciones y honorarios de abogados.

En respuesta, el 16 de marzo de 2026, el señor Deniz Irizarry presentó su *Alegato en Oposición a Certiorari*.

Con el beneficio de la comparecencia de las partes, disponemos del recurso ante nuestra consideración.

---

[5] *Orden*, Entrada Núm. 71 de SUMAC (TPI), pág. 1.

## II. Exposición de Derecho

### a. Certiorari

El auto de *certiorari* permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163, 174 (2020); *Municipio Autónomo de Caguas v. JRO Construction*, 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare LLC.,* 194 DPR 723, 728 (2016). Es, en esencia, un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *García v. Padró,* 165 DPR 324, 334 (2005). La expedición del auto descansa en la sana discreción del tribunal, y encuentra su característica distintiva, precisamente, en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Municipio Autónomo de Caguas v. JRO Construction,* supra*,* pág. 711. El concepto discreción implica la facultad de elegir entre diversas opciones. *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). Claro, la discreción judicial no es irrestricta y ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Municipio Autónomo de Caguas v. JRO Construction,* supra*,* págs. 711-712; *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52, establece que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre, en lo pertinente, de: *casos de relaciones de familia.*

En virtud de lo anterior, para poder ejercitar debidamente nuestra facultad revisora sobre un caso, primeramente, debemos determinar si el asunto del cual se recurre se encuentra dentro de alguna de las materias contempladas en la Regla 52.1, *supra.* De ser así, entonces procede evaluar

si a la luz de los criterios enumerados en la Regla 40[6] de nuestro Reglamento, 4 LPRA Ap. XXII-B, se justifica nuestra intervención. Con todo, se ha de considerar que ninguno de los criterios contenidos en la Regla 40 citada, es determinante por sí solo para el ejercicio de nuestra jurisdicción. *García v. Padró, supra.*

En este ejercicio, nuestro máximo foro ha expresado que un tribunal apelativo no intervendrá con las determinaciones interlocutorias discrecionales procesales de un tribunal sentenciador en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Argüello v. Argüello*, 155 DPR 62, 78-79 (2001). Cónsono con esto, el mismo alto foro ha advertido que nuestro ordenamiento jurídico desfavorece la revisión de las determinaciones interlocutorias. *Medina Nazario v. Mcneil Healthcare LLC*, supra, pág. 730.

### b. Derecho a recibir alimentos

En nuestro ordenamiento jurídico los menores tienen un derecho fundamental a recibir alimentos. *Díaz Rodríguez v. García Neris,* 208 DPR 706, 717 (2022); *Fonseca Zayas v. Rodríguez Meléndez*, 180 DPR 623, 632 (2011). Este derecho es inherente al derecho fundamental a la vida, consagrado en la Carta de Derechos de nuestra Constitución. *Díaz Ramos v. Matta Irizarry*, 198 DPR 916, 923 (2017); *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 169 (2016); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 559-560 (2012); *Llorens Becerra v. Mora Monteserín*, 178

---

[6]   A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.
   B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.
   C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
   D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberá ser elevados, o de alegatos más elaborados.
   E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
   F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
   G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

DPR 1003, 1016 (2010); *McConnell v. Palau,* 161 DPR 734, 745 (2004). Los casos sobre alimentos de menores están revestidos del más alto interés público. *Díaz Rodríguez v. García Neris,* supra, pág. 5; *Fonseca Zayas v. Rodríguez Meléndez,* supra, pág. 632; *Argüello v. Argüello,* 155 DPR 62, 70 (2001). En estos, el interés no puede ser otro que el bienestar del menor. *Toro Sotomayor v. Colón Cruz,* 176 DPR 528 (2009).

Tratándose de un derecho de tan alto interés público, el Estado, como parte de su política pública, ha legislado ampliamente para velar por su cumplimiento. *Martínez v. Rodríguez,* 160 DPR 145 (2003). La obligación general de proveer alimentos entre parientes se encuentra regulada por los Arts. 653 al 678 del Código Civil de Puerto Rico de 2020 (Código Civil), 31 LPRA secs. 7531-7574. No obstante, en aras de asegurar su cumplimiento, se promulgó la Ley Núm. 5 del 30 de diciembre de 1986, según enmendada, conocida como la Ley Orgánica de la Administración para el Sustento de Menores (Ley de ASUME), 8 LPRA sec. 501 *et seq. De León Ramos v. Navarro Acevedo,* 195 DPR 157, 170 (2016).

Por su parte, el Artículo 590 del Código Civil, 31 LPRA sec. 7242, establece que los progenitores tienen el deber de alimentar y proveerle lo necesario para el desarrollo y formación integral de sus hijos sujetos a su patria potestad. Se entiende por alimentos todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia. Cuando el alimentista es menor de edad, los alimentos comprenden también su educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales. Artículo 653 del Código Civil, 31 LPRA 7531.

Por su parte, la Ley de ASUME reformuló la política pública del Estado al crear un procedimiento judicial expedito que brinda protección al mejor interés y bienestar del menor mediante trámites rápidos y eficientes

de fijación, modificación y cobro de pensiones alimentarias. R. Ortega-Vélez, *Compendio de Derecho de Familia*, San Juan, Pubs. JTS, 2000, T. II, pág. 567. A pesar de que el estatuto ha sufrido varias enmiendas a través de los años, se ha conservado en todo momento la política pública de proveer para que "los padres o las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos o dependientes mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias." Art. 3 de la Ley de ASUME, 8 LPRA sec. 502; *De León Ramos v. Navarro Acevedo*, supra, pág. 171. La Ley de ASUME integró el principio de proporcionalidad para incidir tanto en el proceso de fijar la cuantía de los alimentos que amerita establecerse en el caso específico de un menor, así como al prorratear el pago de esos alimentos entre los progenitores. *De León Ramos v. Navarro Acevedo*, supra. En este sentido, el principio de proporcionalidad pretende alcanzar un equilibrio entre aquello que precisa el menor para su bienestar y el capital de sus padres. *Íd.*

### c. Aceptación de capacidad económica

El Artículo 16 de la Ley de ASUME establece que, en los procedimientos relacionados con pensiones alimentarias, el descubrimiento sobre la situación económica del alimentante y alimentista es compulsorio. 8 LPRA sec. 515. A esos efectos, se promulgaron las *Guías para Determinar y Modificar Pensiones Alimentarias en Puerto Rico* (Guías), contenidas en la citada ley. *Franco Restro v. Rivera Aponte,* 187 DPR 137, 149 (2012). Con ellas, se pretende determinar la cuantía de las pensiones alimentarias de menores de edad basadas en criterios numéricos y descriptivos que permitan el cómputo de la cuantía de la obligación alimentaria. *Íd.*

No obstante, hay casos particulares en los que el Tribunal Supremo de Puerto Rico ha reconocido la inaplicabilidad de las Guías para el

cómputo de las pensiones alimentarias. *Díaz Rodríguez v. García Neris,* supra, pág. 719. Específicamente, el alimentante no tiene que descubrir prueba de su situación económica cuando acepta su capacidad para pagar la totalidad de la pensión alimentaria que supla las necesidades del menor. *Íd.*; *Santiago, Maisonet v. Maisonet Correa,* 187 DPR 550, 570 (2012); *Chévere Mouriño v. Levis Goldstein,* 150 DPR 525, 544 (2000). En ese escenario, solo resta determinar la suma justa y razonable a ser impuesta como pensión. *Íd.* Por tal razón, la pensión alimentaria se fijará conforme con los preceptos del Código Civil de Puerto Rico de 2020 contenidos en los Arts. 590, 653 y 666, 31 LPRA secs. 7242, 7531, 7562, tomando en consideración la condición económica y el estilo de vida del alimentante. *Íd.*, págs. 719-720. Ello, en unión a las necesidades de los alimentistas, incluyendo en estas el estilo de vida al cual estaban acostumbrados. *Íd.*; *Santiago, Maisonet v. Maisonet Correa,* supra, pág. 556, citando a *Chévere Mouriño v. Levis Goldstein,* supra. En atención a ello, las necesidades razonables del alimentista serán las que la persona custodia pruebe durante una vista evidenciaria. *Santiago, Maisonet v. Maisonet Correa,* supra, pág. 572.

Cuando el padre alimentante acepta su capacidad económica, se hace innecesario el descubrimiento de prueba. *Chévere Mouriño v. Levis Goldstein,* supra, pág. 544.

Sobre lo anterior, nuestro Tribunal Supremo ha manifestado que, "si el alimentante acepta tener capacidad económica, luego no puede impugnar la pensión que haya sido fijada conforme a las necesidades razonables del alimentista alegando que él no tiene capacidad económica para pagarla", *Chévere Mouriño v. Levis Goldstein,* supra, pág. 546. Sin embargo, el mismo alto foro también ha manifestado que "cuando el padre o la madre no custodio **ha consentido a asumir el cien por ciento (100%) del sustento de un hijo, <u>esta decisión es enteramente voluntaria, por lo que, al serlo, se retiene la capacidad de retirarla</u>**. (Énfasis y

subrayado provistos). *De León Ramos v. Navarro Acevedo,* supra. En cuanto a esto último, nuestro más alto foro estableció que:

> **El retiro de una aceptación de capacidad económica anterior, de por sí, no impacta forzosamente la cuantía de los alimentos que ha de recibir un menor. Cuando un padre** o una madre no custodio **meramente rescinde dicha aceptación, lo que procede es compartir el total de la pensión** hasta entonces asumida por el padre o madre no custodio **proporcionalmente** con el padre o madre custodio. *De León Ramos v. Navarro Acevedo,* supra. (Énfasis suplido).

Aún sobre lo mismo, el Tribunal Supremo agregó:

> [...] en lo concerniente al momento en que opera el retiro de una aceptación de capacidad económica anterior, queda claro que el concepto "justa causa", incorporado en el Art. 19(c), únicamente se establece como requisito para solicitudes de revisión y modificación de órdenes de pensión sometidas antes de que transcurran tres años desde su expedición. Por lo tanto, luego de expirado el término antes mencionado, [...] no se puede imponer al alimentante el deber de justificar su solicitud como condición para revisar una pensión. Ello es así indistintamente de si la petición viene acompañada de un aviso de retiro de una aceptación de capacidad económica anterior. *De León Ramos v. Navarro Acevedo,* supra.

Finalmente, y muy recientemente, en *Cuevas Rodríguez v. Miranda Beníquez,* 2026 TSPR 45, el Tribunal Supremo no permitió la imposición a un alimentante de la aceptación de capacidad económica como sanción del foro primario por incumplimientos en el proceso de descubrimiento de prueba.

## III. Aplicación del Derecho a los hechos

a.

No cabe duda de que la controversia que aquí se nos plantea, el retiro por el recurrido de la aceptación de capacidad económica para cubrir una pensión alimentaria a favor de una menor antes de que se hubiese impuesto la pensión final, al ser una sobre *relaciones de familia,* ubica dentro de los asuntos concebidos en la Regla 52.1 de Procedimiento Civil, *supra,* que nos permite intervenir con una resolución interlocutoria emitida por el foro primario. Sin embargo, como precisamos en la exposición de derecho, ello nos faculta a ejercitar nuestra discreción para expedir el recurso solicitado, no nos obliga a ello.

b.

Tal como lo revelan los señalamientos de error alzados, la señora Irizarry Matos le atribuye al foro primario haber incidido al permitir que el recurrido retirara su admisión previa de capacidad económica, "cuando el trámite está adelantado y pendiente una vista final pautada y regida por la alegación reiterada y voluntaria de capacidad".[7]

Sobre lo anterior, caben varias precisiones sobre el momento procesal en que el recurrido solicitó autorización al Tribunal para retirar su previa aceptación de capacidad económica para cubrir el cien por ciento (100%) de las necesidades razonables de su hija menor de edad. Primero, al momento en que tal solicitud fue hecha, no se había celebrado la vista de pensión alimentaria final, por consiguiente, se carecía de una determinación del TPI imponiéndole tal pensión alimentaria final al recurrido. Entonces, visto el razonamiento de nuestro Tribunal Supremo en *León Ramos v. Navarro Acevedo*, supra, en lo relativo al momento en que la parte alimentante puede retirar una aceptación de capacidad económica previa, como mínimo sabemos que en el caso ante nosotros no cabe argumentar acerca de si ha transcurrido el término para revisar la pensión alimentaria, o siquiera si ha habido un cambio sustancial en las condiciones económicas de la parte que retira la aceptación de capacidad, pues, reiteramos, ni siquiera se ha celebrado la vista final para imponer la pensión alimentaria final.

Por otra parte, si la pretensión de la parte peticionaria es que se sancione al recurrido con mantener su previa aceptación de capacidad económica porque el proceso está muy adelantado y la vista final próxima a celebrarse, lo cierto es que hace tan solo un mes que nuestro Tribunal Supremo dispuso en *Cuevas Rodríguez v. Miranda Beníquez*, supra, que, el TPI cuenta con otros mecanismos sancionadores disponibles para que no se afecte la celeridad con la que deben tratarse las determinaciones sobre

---

[7] Petición de *certiorari*, pág. 22.

pensiones alimentarias, como lo son las sanciones económicas, sin afectar el marco sustantivo donde se desenvuelve la aceptación de pensión alimentaria, el de la voluntariedad del alimentante que decide aceptar capacidad económica.

En cualquier caso, nos resulta evidente que la actuación del foro recurrido no estuvo desprovista de base razonable, ni perjudica los derechos sustanciales de la menor, pues, al decir el Tribunal Supremo: "el retiro de una aceptación de capacidad económica anterior, de por sí, no impacta forzosamente la cuantía de los alimentos que ha de recibir un menor. Cuando un padre o una madre no custodio meramente rescinde dicha aceptación, lo que procede es compartir el total de la pensión hasta entonces asumida por el padre o madre no custodio proporcionalmente con el padre o madre custodio". *De León Ramos v. Navarro Acevedo*, supra.

Finalmente, la resolución interlocutoria revisada fue un ejercicio discrecional del foro recurrido en la que no apreciamos el error, la pasión, el prejuicio o el error manifiesto que nos habilitarían para intervenir con el normal curso de los procesos que allí se llevan a cabo.

**IV. Parte dispositiva**

Por lo explicado, denegamos expedir el recurso de *certiorari* solicitado.

Lo acordó y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones